UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| THE LINCOLN ELECTRIC COMPANY, | ) | CASE NO. 1:11CV2253 |
| Plaintiff, | ) ) ) | JUDGE DONALD C. NUGENT |
| v. | ) ) ) | |
| TRAVELERS CASUALTY AND SURETY COMPANY, ET AL., | ) ) ) ) ) ) | **ORDER OF CERTIFICATION TO THE SUPREME COURT OF OHIO** |
| Defendants. | ) | |

## I. QUESTION TO BE CERTIFIED

Pursuant to Rule 9.01 of the Rules of Practice of the Supreme Court of Ohio, this Court certifies to the Supreme Court of Ohio the following question of Ohio state law:

> May an insured who has accrued indemnity and defense costs arising from progressive injuries, and who settles resultant claims against primary insurer(s) on a pro rata allocation basis among various primary insurance policies, employ an "all sums" method to aggregate unreimbursed losses and thereby reach the attachment point(s) of one or more excess insurance policies?

This Court seeks a judicial determination of the above-stated question by the Supreme Court of Ohio given: the lack of controlling precedent from the Supreme Court of Ohio concerning the proper method for allocating unreimbursed losses under these circumstances; conflicts between precedent issued by Ohio courts; conflicts between precedent from Ohio courts and the United

1

States Court of Appeals for the Sixth Circuit; the pivotal importance of this issue in this case; and the likelihood that this Ohio law question will be relitigated in state and federal courts.

## II. STATEMENT OF FACTS

In this action, Plaintiff The Lincoln Electric Company ("Lincoln Electric") seeks declaratory relief that its umbrella insurers, Travelers Casualty and Surety Company, f/k/a Aetna Casualty and Surety Company ("Travelers" or "Aetna") and St. Paul Fire and Marine Insurance Company ("St. Paul") (collectively, the "Umbrella Insurers"), have a duty to defend and indemnify it for underlying welding product claims. Lincoln Electric also seeks damages for these insurers' alleged failure to provide coverage.

### A. The Welding Product Claims

Lincoln Electric is an Ohio company that has been sued by thousands of claimants seeking damages for long-term bodily injury from alleged exposure to harmful substances (*e.g.*, asbestos, manganese, and welding fumes) in Lincoln Electric's welding products. In connection with these welding product claims, Lincoln Electric asserts that it has incurred over $12 million in indemnity costs (payments of settlements and adverse judgments) for the period from July 1, 2000 through December 31, 2012. Lincoln Electric further asserts that $4.5 million of the indemnity costs have not been reimbursed by insurance. According to Lincoln Electric, it also has incurred over $179 million in defense costs in connection with the welding product claims from November 1, 1999 through December 31, 2012, of which more than $86.7 million has been unreimbursed by insurance.

### B. The Primary And Umbrella Insurance Policies At Issue

Lincoln Electric purchased primary liability insurance from St. Paul from 1947 to 1985. Lincoln Electric also purchased umbrella policies from Aetna (now Travelers) from May 16,

2

1975 to August 1, 1981, and from St. Paul from April 1969 to May 16, 1975, and also from August 1, 1981 to August 1, 1985. Lincoln Electric asserts that its primary and umbrella policies promise to provide defense and indemnity coverage for claims seeking damages for bodily injury occurring during the policy period. Each of the St. Paul primary policies underlying the Aetna and St. Paul umbrella policies has a $2 million policy limit.

At present, Lincoln Electric's coverage claims are focused on the 1980-81 Aetna umbrella policy or, alternatively, the 1983-84 St. Paul umbrella policy.[1] Each of these umbrella policies has a $2 million attachment point and is required to respond when Lincoln Electric's losses exceed $2 million. A St. Paul primary policy (No. 534JH9090) sits directly underneath the 1980-81 Aetna umbrella policy, and another St. Paul primary policy (No. 534JK0495) sits directly underneath the 1983-84 St. Paul umbrella policy.

### C. The Primary Policy Agreement

In June 2000, Lincoln Electric and St. Paul resolved a dispute concerning coverage for welding product claims under Lincoln Electric's primary policies by entering into a settlement agreement (the "Primary Policy Agreement").[2] The Primary Policy Agreement sets forth St. Paul's obligations, as Lincoln's primary insurer, with regard to welding product claims against Lincoln. Under the Agreement, St. Paul pays only a portion of Lincoln Electric's defense and indemnity costs; that percentage decreases over time.[3]

---

[1] Lincoln Electric purports to reserve its rights under the other umbrella policies.

[2] Lincoln Electric and St. Paul are the only parties to the Primary Policy Agreement.

[3] No other insurer has reimbursed Lincoln Electric for the (increasing) percentage of defense and indemnity costs not paid by St. Paul.

The Primary Policy Agreement provides that, for purposes of exhausting St. Paul's primary policy limits, St. Paul's indemnity payments under the Agreement are spread equally (allocated on a "pro rata" basis) across all primary policies. According to information supplied by St. Paul, it appears that, as of April 2013, the 1980-81 primary policy limit was eroded by St. Paul indemnity payments of $717,528, and the 1983-84 primary policy was eroded by St. Paul indemnity payments of $1,121,214. The Primary Policy Agreement does not specify any method for allocating Lincoln Electric's unreimbursed indemnity payments.

### D. This Coverage Action

Under the Primary Policy Agreement, St. Paul has paid substantially less than 100% of Lincoln Electric's defense and indemnity costs, and Lincoln Electric has paid the rest of those costs (Lincoln Electric claims that is has paid more than $91 million to date). Lincoln Electric maintains that its losses will grow to well over 50 % going forward.

Lincoln Electric brought this action seeking a declaration that it is entitled to recover a portion of its unreimbursed defense and indemnity payments from a selected umbrella policy. Specifically, Lincoln Electric believes that it is entitled to recover that portion of its unreimbursed costs incurred after unreimbursed payments have been allocated on a vertical, all sums basis to exhaust the underlying primary policy limits and reach the $2 million attachment point of that umbrella policy. The Umbrella Insurers contend that Lincoln Electric forfeited the right to allocate unreimbursed losses on a vertical, all sums basis when it entered into the Primary Policy Agreement, under which losses were allocated to Lincoln Electric's primary policies with St. Paul on a horizontal, pro rata basis.

The parties agree that the central issue in this litigation is whether, in the wake of the Primary Policy Agreement, Lincoln Electric may revert to an all sums approach to aggregate its

unreimbursed losses, and thereby reach the attachment point(s) of one or more of the excess insurance policies identified in Lincoln Electric's First Amended Complaint. Both Lincoln Electric and the Umbrella Insurers have filed partial motions for summary judgment on this allocation issue, recognizing that it is an issue of law that properly can be resolved by the Court.

This Court agrees that the allocation question certified herein is one of law that can be resolved on summary judgment. However, Ohio law is apparently unclear regarding the certified question. The Supreme Court of Ohio has not considered whether, in the face of a pro rata settlement of primary insurance claims, an insured forfeits the right to employ an all sums approach to aggregate unreimbursed losses and thereby reach the attachment points of any excess insurance policy.

Although the Supreme Court of Ohio has held that courts may use the all sums method to allocate losses to primary policies where there has been no pro rata settlement under those policies (see the *Goodyear* decision, *infra.*), the Supreme Court apparently has not been presented with the precise issue here. Moreover, lower Ohio courts have reached different conclusions respecting the certified question (compare the *Goodrich* decision, *infra.* (Ninth District Court of Appeals), and the *MW Custom Papers* decision, *infra.* (Montgomery County Court of Common Pleas)). The only Ohio appellate court to consider the issue held – under facts extremely similar to those present here – that an all sums approach is permissible (*Goodrich, infra.*). Further, the Ohio appellate court's decision in *Goodrich* directly contradicts an earlier decision of the United States Court of Appeals for the Sixth Circuit (see the *GenCorp* case, *infra.*), in which the federal appellate court held that, under Ohio law, an insured who enters into a pro rata settlement of losses under underlying primary policies forfeits the right to reach the attachment points of umbrella policies using an all sums aggregation method.

In the *Goodyear Tire & Rubber Co. v. Aetna Casualty & Surety Co.*, 769 N.E.2d 835 (Ohio 2002), the Supreme Court of Ohio considered whether, in the case of claims of progressive injury, Ohio law requires courts to use the all sums or pro rata method of allocating insurance payments for the purpose of determining exhaustion of primary policy limits. *Id.* at 840-42. The *Goodyear* court adopted the all sums approach, holding that the policyholder "should be permitted to choose, from the pool of triggered primary policies, a single primary policy against which it desires to make a claim."[4] *Id.* at 841.

The *Goodyear* decision supersedes the prior decision of the United States Court of Appeals for the Sixth Circuit in *Lincoln Electric Co. v. St. Paul Fire & Marine Ins. Co.*, 210 F.3d 672 (6th Cir. 2000). In that case, the federal appellate court incorrectly predicted that the Supreme Court of Ohio would adopt the pro rata allocation method.[5]

The Umbrella Insurers argue against the all sums approach in this case based on another prediction of Ohio law by the Sixth Circuit. Specifically, the Umbrella Insurers rely on the Sixth

---

[4] In the decade since *Goodyear* was decided, Ohio courts have uniformly applied the all sums method. *See, e.g., Penn. Gen. Ins. Co. v. Park-Ohio Indus.*, 930 N.E.2d 800, 803 (Ohio 2010) ("[w]e continue to adhere to the all-sums method of allocation adopted in *Goodyear*"); *Goodrich Corp. v. Commercial Union Ins. Co.*, No. 23585, 2008 WL 2581579, at *24025 (Ohio Ct. App. June 30, 2008) (applying the all sums approach from *Goodyear*).

[5] Lincoln Electric and St. Paul previously litigated in the Northern District of Ohio and the Sixth Circuit the issue of when a particular primary insurance policy is "triggered by a claim involving a long-term exposure and delayed manifestation injury." *Lincoln Elec. Co. v. St. Paul Fire & Marine Ins. Co.*, 10 F. Supp. 2d 856 (N.D. Ohio 1998), *aff'd in part and rev'd in part*, 210 F.3d 672 (6th Cir. 2000). This dispute involved primary policies that St. Paul issued to Lincoln Electric. Specifically, the parties litigated whether Lincoln Electric could elect to allocate all losses from welding product claims to any triggered policy (the "all sums" approach advocated by Lincoln Electric) or whether the losses needed to be allocated equally across all policies (the "pro rata" approach) advocated by St. Paul. *Id.* at 678. The Sixth Circuit resolved the issue in favor of the pro rata approach advocated by St. Paul. As discussed above, the Supreme Court of Ohio's subsequent *Goodyear* decision makes clear that the Sixth Circuit incorrectly predicted Ohio law.

6

Circuit's summary affirmance of a magistrate judge's decision in *GenCorp Inc. v. AIU Ins. Co.*, 138 F. App'x 732 (6th Cir. 2005) (unpublished), *aff'g* 297 F. Supp. 2d 995 (N.D. Ohio 2003).[6] However, *GenCorp* – much like *Lincoln Electric v. St. Paul* – has been called into serious question by a later Ohio appellate court decision, *Goodrich*, that is directly on point.

In *GenCorp*, the insured had settled with all of its primary insurers. *GenCorp*, 297 F. Supp. 2d at 998. It argued "that *Goodyear* allows it to allocate its liability . . . to a single primary policy, exceed the coverage provided by that policy without exhausting the coverage provided by other primary policies, and 'rise up' to the coverage provided by the excess insurers." *Id.* at 1006-07. The federal appellate court disagreed, holding that the insured could not apply an all sums allocation because, by settling with all of its primary insurers on a pro rata basis, GenCorp had "already made its allocation" and had forfeited the right to use an all sums allocation to reach the excess carriers.[7] *Id.* at. 1007. This conclusion was soon rejected by the

---

[6]The Sixth Circuit's unpublished *GenCorp* decision is not binding on this Court. *Sheets v. Moore*, 97 F.3d 164, 167 (6th Cir.1996) (unpublished opinions "carry no precedential weight ... [and] have no binding effect on anyone other than the parties to the action", but their reasoning may be "instructive" or helpful).

[7]According to Lincoln Electric, the horizontal exhaustion approach urged by the Umbrella Insurers and adopted in *GenCorp* would discourage settlements, because it would result in a forfeiture of coverage. According to the Umbrella Insurers' approach, the all sums method would apply before settlement (per *Goodyear*), but pro rata would apply after settlement. Because settlements always involve compromise, they are almost never for the full policy limits or coverage. However, the *GenCorp* rule urged by the Umbrella Insurers would require the policyholder to allocate horizontally until the full limits of the entire primary layer are exhausted – even though the primary layer has already been settled. Lincoln Electric contends that a likely result is that the policyholder would forfeit substantial coverage, not being able to access any non-settled excess policies until it paid the limits of all settled primary policies. According to Lincoln Electric, this is contrary to the basic purpose of insurance, which is to protect the insured from having to bear the costs arising from covered risks.

7

Ninth District Court of Appeals of Ohio in *Goodrich*.[8]

In 2008, the Ninth District Court of Appeals decided *Goodrich*, a case involving factual and legal issues similar to those in *GenCorp*, and reached the opposite conclusion. *Goodrich* involved environmental contamination which triggered coverage under primary and excess liability policies in effect from 1963 to 1983. 2008 WL 2581579 at *1. Like Lincoln Electric, Goodrich had also settled with all of its primary insurers. Under Ohio's all sums approach, Goodrich sought coverage under its excess policies attaching at $20 million to pay the remainder of the claim. *Id.* Thus, Goodrich needed at least $20 million in losses to exhaust the directly underlying limits of one primary policy and reach the excess policy in a selected policy period. *Id.*

After trial in the coverage action, the jury awarded Goodrich $42 million in damages under its excess policies. *Id.* After reducing the judgment by $20 million (because liability under the excess policies did not attach until Goodrich's damages had reached $20 million),[9] the trial court found that Goodrich's losses were sufficient to reach the targeted excess policy based on an all sums, vertical allocation approach. Two key aspects of the court's holding are that: (1) the trial court allowed an all sums allocation even after Goodrich had settled with its primary insurers for more than 20 years of primary coverage, and (2) to reach the selected excess policy,

---

[8] The *GenCorp* court did not explain how its result could be brought into consonance with the all sums approach in *Goodyear*.

[9] Lincoln Electric concedes that the Umbrella Insurers would not be required to pay the portion of Lincoln Electric's unreimbursed costs needed to exhaust the underlying limit, and that Lincoln Electric would be required to absorb that amount for its own account.

Goodrich was required to exhaust the directly underlying policy, and not policies in other years. *Id.* at *1-2.[10]

On appeal to the Ninth District, the excess insurers relied heavily on *GenCorp*, arguing that because Goodrich had settled with its entire primary layer, it was required to use a pro rata allocation approach to reach the excess policies and had forfeited the right to use the all sums allocation method. Stated another way, the insurers asserted that the non-settling excess insurer would be liable only for losses that exceeded the combined limits of all settled primary and lower level excess policies.

Goodrich responded that *GenCorp* should not be followed because it discouraged settlement, and because it contradicted the all sums, vertical allocation approach adopted by the Supreme Court of Ohio in *Goodyear*. Specifically, Goodrich argued that *GenCorp* "disregard[ed] *Goodyear* [by] requiring policyholders to horizontally allocate their losses among all their triggered [primary] policies" (*i.e.*, on a pro rata basis) before reaching any excess coverage. *Id.* at 16, n. 13.

The Ninth District Court of Appeals ultimately rejected the insurers' arguments that relied on *GenCorp* and held that a policyholder can pursue an excess insurer on an all sums basis without the requirement of exhausting all other primary policies, even after the policyholder had settled with its primary insurers for 20 years of primary coverage. Thus, under *Goodrich*, a policyholder can pursue excess coverage on an all sums basis without horizontally exhausting all of its primary coverage. (This is precisely what Lincoln Electric seeks to do here.)

---

[10]The *Goodrich* trial court "repeatedly stated throughout its judgment entry that its judgment against each [excess insurer] presumed selection under *Goodyear*" and the all sums approach endorsed in that decision.

It appears that the Ninth District Court of Appeals is the highest court in Ohio to consider the issue certified here. This court is aware of only one trial court (apart from the *Goodrich* court) to examine the issue. In *MW Custom Papers LLC v. Allstate Ins. Co.*, No. 2012 CV 03228, 2012 WL 6565832 (Montgomery Cty. Ct. Com. Pl. Sept. 21, 2012), the court reached a conclusion opposed to the holding in *Goodrich*. Citing *GenCorp*, the trial court dismissed a policyholder's claims against several excess insurers on justiciablity grounds. The policyholder, faced with asbestos liability claims, had entered into cost sharing agreements with primary carriers. The court held that by electing to allocate its claims horizontally in the cost sharing agreements, the policyholder could not use all sums allocation to reach the attachment points of excess policies, and thus did not have viable claims against excess carriers. *Id.* There is no evidence that the Montgomery County Court of Common Pleas was presented with the *Goodrich* decision.[11]

### III. REASONS FOR CERTIFICATION

This Court is presented with the same question that faced the courts in *GenCorp*, *Goodrich*, and *MW Custom Papers*, *i.e.*, whether all sums or pro rata allocation must be used in the wake of a pro rata settlement of the primary insurance layer to aggregate the insured's unreimbursed losses before the attachment point(s) of any excess policy may be reached. Having reviewed the parties' cross motions for summary judgment on this allocation issue, this Court is persuaded, and the parties agree, that this issue will be largely determinative of this action. As set forth in the above discussion of this coverage action, multiple millions of dollars in damages are at stake depending on the answer to this question. Moreover, there is a high

---

[11]The trial court's decision in *MW Custom Papers* is on appeal, but the appeal has been stayed pending a mediation.

likelihood that, in the absence of controlling precedent from the Supreme Court of Ohio, this question of Ohio law will be relitigated at great cost in insurance actions in state and federal courts.

Given the determinative importance of the certified question in the action before this Court, the likelihood of future litigation, the conflicting status of state and federal precedent on the issue (as reflected in the holdings in *GenCorp*, *Goodrich*, and *MW Custom Papers*), and the lack controlling precedent in the decisions of the Supreme Court of Ohio, this Court seeks a judicial determination from the Supreme Court of Ohio regarding the above-stated question of Ohio law. Specifically, as discussed, this Court certifies to the Supreme Court of Ohio the following issue:

> May an insured who has accrued indemnity and defense costs arising from progressive injuries, and who settles resultant claims against primary insurer(s) on a pro rata allocation basis among various primary insurance policies, employ an "all sums" method to aggregate unreimbursed losses and thereby reach the attachment point(s) of one or more excess insurance policies?

### IV. INFORMATION REQUIRED BY RULE OF PRACTICE 9.02

The following information is provided in accordance with the Supreme Court of Ohio Rule of Practice 9.02.

**A. Name Of The Case**

*Lincoln Electric Company v. Travelers Casualty and Surety Company, et al.*, N.D. Ohio Case No. 1:11CV02253 (Nugent, J.).

**B. Statement Of Facts**

Please see Section II of this Certification Order.

**C. The Names Of Each Of The Parties**

11

    1.    Plaintiff The Lincoln Electric Company

    2.    Defendant Travelers Casualty and Surety Company, f/k/a Aetna Casualty and Surety Company

    3.    Defendant St. Paul Fire and Marine Insurance Company

**D.** **Attorney Information**

A copy of the Court's docket is attached as Ex. 1.

    1.    Plaintiff's Counsel

> Anna P. Engh (*pro hac vice*)
> Covington & Burling - Washington
> 1201 Pennsylvania Avenue, NW
> Washington, DC 20004
> 202-662-6000
> Fax: 778-5221
> Email: aengh@cov.com
>
> Danielle S. Barbour (*pro hac vice*)
> Covington & Burling - Washington
> 1201 Pennsylvania Avenue, NW
> Washington, DC 20004
> 202-662-5992
> Fax: 202-778-5992
> Email: dbarbour@cov.com
>
> Jamar K. Walker (*pro hac vice*)
> Covington & Burling - Washington
> 1201 Pennsylvania Avenue, NW
> Washington, DC 20004
> 202-662-5451
> Fax: 202-778-5451
> Email: jwalker@cov.com
>
> Sarah R. MacDonald (*pro hac vice*)
> Covington & Burling - Washington
> 1201 Pennsylvania Avenue, NW
> Washington, DC 20004
> 202-662-5166
> Fax: 202-778-5166
> Email: smacdonald@cov.com

Timothy D. Greszler (*pro hac vice*)
Covington & Burling - Washington
1201 Pennsylvania Avenue, NW
Washington, DC 20004
202-662-5461
Fax: 202-778-5461
Email: tgreszler@cov.com

Nicholas A. DiCello (0075745)
Spangenberg, Shibley & Liber
Ste. 1700
1001 Lakeside Avenue, E
Cleveland, OH 44114
216-696-3232
Fax: 216-696-3924
Email: ndicello@spanglaw.com

William B. Eadie (0085627)
Spangenberg, Shibley & Liber
Ste. 1700
1001 Lakeside Avenue, E
Cleveland, OH 44114
216-696-3232
Fax: 216-696-3924
Email: weadie@spanglaw.com

Dennis R. Lansdowne (0026036)
Spangenberg, Shibley & Liber
Ste. 1700
1001 Lakeside Avenue, E
Cleveland, OH 44114
216-696-3232
Fax: 696-3924
Email: dlansdowne@spanglaw.com

2. Defendants' Counsel

Matthew T. O'Connor (*pro hac vice*)
Simpson, Thacher & Bartlett - New York
425 Lexington Avenue
New York, NY 10017
212-455-2000
Fax: 212-455-2502
Email: moconnor@stblaw.com

Michelle L. Hertz (*pro hac vice*)
Simpson, Thacher & Bartlett - New York
425 Lexington Avenue
New York, NY 10017
212-455-2000
Fax: 212-455-2502
Email: mhertz@stblaw.com

Alexander B. Simkin (*pro hac vice*)
Simpson, Thacher & Bartlett - New York
425 Lexington Avenue
New York, NY 10017
212-455-2000
Fax: 212-455-2502
Email: asimkin@stblaw.com

Bryce L. Friedman (*pro hac vice*)
Simpson, Thacher & Bartlett - New York
425 Lexington Avenue
New York, NY 10017
212-455-2000
Fax: 216-455-2502
Email: bfriedman@stblaw.com

Mary Beth Forshaw (*pro hac vice*)
Simpson, Thacher & Bartlett - New York
425 Lexington Avenue
New York, NY 10017
212-455-2000
Email: mforshaw@stblaw.com

Michael E. Smith (0042372)
Frantz Ward
2500 Key Tower
127 Public Square
Cleveland, OH 44114
216-515-1660
Fax: 216-515-1650
Email: msmith@frantzward.com

**E.  Designation Of Moving Party**

The Court designates The Lincoln Electric Company as the moving party.

## V. INSTRUCTIONS TO THE CLERK

In accordance with Rule of Practice of the Supreme Court of Ohio 9.03, Geri M. Smith, Clerk of the United States District Court for the Northern District of Ohio, is hereby instructed to serve copies of this Certification Order upon counsel for the parties and to file this Certification Order under the seal of this Court with the Supreme Court of Ohio, along with appropriate proof of service.

IT IS SO ORDERED.

*/s/ Donald C. Nugent*
DONALD C. NUGENT
UNITED STATES DISTRICT JUDGE

DATE: July 3, 2013